TAGGED OPINION



ORDERED in the Southern District of Florida on February 21, 2013.

*Laurel M. Isicoff*
**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

_____

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | CASE NO. 09-10758-BKC-LMI |
| ALVIN P. DANIELS and ETHEL M. DICKENS, | Chapter 13 |
| Debtors. | |
| _____/ | |

### ORDER ON MOTION OF WELLS FARGO BANK
### TO DETERMINE STATUS AND VALUE OF LIEN

This matter came before the Court on Motion of Creditor Wells Fargo Bank to Determine Status and Value of Lien (ECF #200) (the "WF Motion"). The Court has reviewed the WF Motion, the Debtor's Response (ECF #247) and Wells Fargo Bank's Reply (ECF #250). The Court having considered the pleadings, the applicable case law, and the history of this case, the WF Motion is granted in part and denied in part for the reasons that follow.

*Introduction*

Every lender's nightmare is the unintentionally unperfected security interest. Many times the failure to perfect can have significant adverse consequences to the unfortunate lender, usually because other lenders, vendees, or judgment creditors seek to realize their own interests in the hapless lender's collateral. Many times these adverse consequences arise when a borrower files for bankruptcy. In this case, the lender, Wells Fargo Bank, as successor to BNC Mortgage, Inc. ("Wells Fargo"),[1] has had to deal with the harsh consequences of a confluence of intervening lenders and the borrowers' bankruptcy. The issue presented to the Court today is not, what are the consequences of Well Fargo's misfortunes, but rather, the consequences of actions Wells Fargo did or did not take in the Daniels' bankruptcy case to avoid or minimize the damages from the failure of BNC Mortgage, Inc. ("BNC") to record its mortgage.

*Procedural and Factual Summary*

On March 30, 2006, the Debtors, Alvin and Ethel Daniels, executed a promissory note in favor of BNC in the principal amount of $192,000. The Daniels also executed a mortgage (the "BNC Mortgage") in favor of BNC, encumbering their homestead located in Miami, Florida (the "Property"). For some reason the BNC Mortgage was never recorded.

On July 6, 2007, the Debtors executed a promissory note in favor of American Investment Services ("AIS") in the principal amount of $17,700 secured by a mortgage on the Property (the "AIS First Mortgage"). On November 28, 2007, the Debtors executed another promissory note in favor of AIS in the principal amount of $18,100, also secured by a mortgage on the Property (the "AIS Second Mortgage," together with the AIS First Mortgage, the "AIS

---

[1] Wells Fargo is actually the servicer for the lender who is, according to the Proof of Claim, Deutsche Bank National Trust Company, as trustee for Sound View Home Loan Trust 2006-3. For purposes of this opinion, Wells Fargo will be referred to as the lender.

Mortgages"). AIS properly and timely recorded the AIS Mortgages prior the filing of this bankruptcy case.

On January 18, 2009 (the "Petition Date"), the Debtors filed this chapter 13 proceeding. Wells Fargo filed a Proof of Claim on February 20, 2009, asserting a secured claim in the principal amount of $189,755.98. On September 15, 2009 the Debtors filed an amended objection to Wells Fargo's claim on the basis that the BNC Mortgage was not recorded (ECF #83).[2] The amended objection was served on attorney Lisa Ehrenreich of the Law Offices of David Stern, PA, who had filed the proof of claim on behalf of Wells Fargo. However, no order on the amended objection was ever entered.

On May 5, 2010, AIS filed an adversary proceeding[3] against Wells Fargo, the Chapter 13 Trustee, and the Debtors, seeking a determination of the priority of the AIS Mortgages over the BNC Mortgage. On February 17, 2011, Michele Cavallaro of Fidelity National Title Group was substituted as counsel for Wells Fargo in the adversary proceeding. On or about July 6, 2011, Wells Fargo and AIS settled; Wells Fargo purchased the AIS Mortgages and the adversary proceeding was dismissed. A Motion to Compromise Controversy and Approve Settlement was filed in the main case on September 11, 2011 (ECF #167) and an Order Approving the Settlement was entered on January 26, 2012 (ECF #196).[4]

On August 2, 2011 the Debtors filed their Renewed Objection to Claim (ECF #161), again objecting to the treatment of the claim as secured because the BNC Mortgage was not recorded. The Renewed Objection was electronically served on Michele Cavallaro on behalf of

---

[2] The Debtors filed an objection to Wells Fargo's claim early in the case (ECF #50) challenging the amount of the claim, not the status of the claim, but never pursued that objection.

[3] Adv. Case No. 10-02948-LMI.

[4] The delay between the filing of the motion and the entry of the order was due to the Chapter 13 Trustee's assertion that she might be able to avoid the BNC Mortgage for the benefit of unsecured creditors. That issue was resolved because the time within which the Chapter 13 Trustee could bring such an action had expired.

Wells Fargo and served by the Debtors on Mr. Heffernan, Wells Fargo's new lawyer.[5] The Order Sustaining the Renewed Objection to Claim was entered on November 7, 2011 (ECF #185) (the "11/11 Order") and served electronically on attorney Michele Cavallaro and on Mr. Heffernan on behalf of Wells Fargo.

*Analysis*

On February 3, 2012, Wells Fargo filed the WF Motion,[6] seeking a determination by this Court that the BNC Mortgage is valid as between the Debtors and Wells Fargo, asking that 11/11 Order be vacated or amended, asking for a finding that Wells Fargo holds a secured claim in this case, and valuing the amount of that secured claim. Wells Fargo also argues that Wells Fargo has an equitable lien against the Property. The Debtors argue in their response that the relief sought by Wells Fargo is barred by *res judicata* or collateral estoppel, and that further determination of whether the BNC Mortgage creates a lien on the Property is precluded.[7] The Debtors correctly point out that Wells Fargo did not contest entry of the 11/11 Order; Wells Fargo did not file any motion to reconsider under either Fed. R. Bankr. P. 9023[8] or 9024;[9] or seek any such relief in the WF Motion. Nor did Wells Fargo take any other steps to try to set aside the 11/11 Order. Since Wells Fargo did not contest the 11/11 Order either when the

---

[5] On January 27, 2011, the Marinosci Law Group, PA and Bart Heffernan were substituted as counsel for Wells Fargo.

[6] No one has raised an objection to Wells Fargo's use of a motion rather than an adversary proceeding to bring this issue before the Court. Since the relief requested crosses a number of different issues, based solely on law and not fact, the Court will not *sua sponte* concern itself with whether the Wells Fargo motion involves any procedural missteps. The Court has jurisdiction of the issues presented, in whatever form they have been presented.

[7] The Debtors also challenge Ms. Cavallaro's standing to pursue this relief on behalf of Wells Fargo. While Ms. Cavallaro did not file a formal notice of appearance on behalf of Wells Fargo in the main case, there is no question that she represents Wells Fargo in this dispute or that Wells Fargo has standing to make these arguments. *Accord Westwood Community Two Ass'n v. Barbee (In re Westwood Community Two Ass'n)*, 293 F.3d 1332, 1335 (11th Cir. 2002)(A party has standing to appeal a bankruptcy order if the party is a "person aggrieved" – a party having a direct and pecuniary interest in the outcome).

[8] Rule 9023 provides that F.R.Civ.P. 59 applies in bankruptcy cases.

[9] Rule 9024 provides that F.R. Civ. P. 60 applies in bankruptcy cases with limited exceptions.

Renewed Motion was filed or after the 11/11 Order was entered, the Debtors argue that Wells Fargo is bound by its terms.

In its reply Wells Fargo argues that, while Mr. Heffernan, Wells Fargo's counsel of record, received notice of the hearing on the Renewed Motion and the 11/11 Order, Ms. Cavallaro, who was litigating the adversary proceeding, did not. Moreover, Wells Fargo argues that it is no small wonder Mr. Heffernan did not realize the Renewed Objection required his attention when it was filed two years after the original objection.[10]

This last argument can be easily dispatched. First, as outlined in detail above, the Court's computer docket registry indicates that Ms. Cavallaro did in fact receive the Renewed Motion and a copy of the 11/11 Order, by electronic notice through the Bankruptcy Noticing Center. Second, Mr. Heffernan did not make an appearance in the case until January 2011, after the prior objections to claim had been filed, so the suggestion that Mr. Heffernan would just ignore the Renewed Objection because there had been other objections is not logical. Finally, Mr. Heffernan has practiced for many years in this Court. If Mr. Heffernan had accidentally missed a hearing and received an order emanating from that hearing, it is highly unlikely that Mr. Heffernan would have just ignored that order if it was entered in error. However, even if signals were crossed between Mr. Heffernan and Ms. Cavallaro, resulting in the entry of the 11/11 Order, neither of them took any steps to set aside that order once it was entered. Accordingly, the Court finds that the Renewed Motion was properly noticed, the 11/11 Order was served on the appropriate parties, and that the 11/11 Order is a final order by which all the parties are bound.

---

[10] For the first time, in its reply, Wells Fargo argued that pursuant 11 U.S.C. §502(j) it is entitled to have its claim reclassified as a secured claim. The Court will address the section 502(j) issue later in this opinion.

Having found that the 11/11 Order is a binding final order, the next issue is the legal effect of that binding order on Wells Fargo's argument that it is entitled to assert a lien against the Property notwithstanding that the BNC Mortgage was not recorded and that the lien, whether based on law or equity, survived the entry of the 11/11 Order.

Wells Fargo argues that, even though this Court has held, by virtue of the 11/11 Order, that Wells Fargo holds an unsecured claim in this bankruptcy case, that finding does not eliminate the lien of the BNC Mortgage. In support of its argument, Wells Fargo cites to *In re Ramsey*, 356 B.R. 217 (Bankr. D. Kan. 2006), *rev'd on grounds of mootness,* 385 B.R. 801 (10th Cir. BAP 2008) ("*Ramsey*"). The issue in *Ramsey* was whether a lender's unrecorded lien was eliminated by (1) a chapter 13 plan that stated the lender's claim would be treated as unsecured and (2) an order on an uncontested claim objection disallowing the claim (which had been filed as a secured claim).[11] The bankruptcy court held that, pursuant to Kansas law,[12] an unrecorded mortgage is enforceable against the parties to a mortgage, and, that because liens pass through bankruptcy "undisturbed" unless something is "done" to the lien during bankruptcy, the only way the lender's lien was eliminated by the confirmation order or the order on the claim objection was if either of the orders barred the lender's assertion of rights under the mortgage by virtue of *res judicata*. *Ramsey* 356 B.R. at 223-24. The bankruptcy court then examined when, in the Tenth Circuit, a confirmation order will have a *res judicata* impact on a creditor's rights.

---

[11] At the lender's urging the chapter 13 trustee sued the lender to avoid the lender's lien for the benefit of the estate. The lender and the chapter 13 trustee then entered into a settlement, pursuant to which the lender would buy the avoided lien from the estate. The issue before the bankruptcy court was the motion to approve the settlement, and the debtor's objection on the grounds that there was no lien left to be avoided or sold.

[12] K.S.A. 58-2223 provides that "[n]o such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record."

*Id.*[13] The court found that the *Ramsey* plan did not seek to avoid or eliminate the lender's lien, and indeed, the plan proposed to pay the obligations secured by the mortgage (other than the arrearages) outside the plan. *Id.* The court, thus, rejected the debtor's argument that the plan put the lender on notice that the debtor would treat the lender's debt like all other unsecured debt unless the lender filed a proof of perfection, noting that the plan merely foretold what the debtor intended to do; "[t]he plan contains no conclusive finding of fact or determination of the validity of… [the lender's] lien." *Id.*

Turning to the order on the claim objection, the *Ramsey* court, while concerned that the lender, like Wells Fargo in this case, ignored the claim objection and did not appeal the order sustaining the objection, nonetheless held that the lien survived the claim objection – "an objection based upon failure to perfect does not extinguish the lien; rather, the trustee's relief is to void and preserve the lien for the benefit of the estate. The lien remains enforceable against the debtor." *Id.* at 225. Consequently, the *Ramsey* court held, because the issue of the lien was never actually litigated and because the claim objection only asked that the claim be either disallowed or classified as unsecured, that the lien "was not the subject of a bona fide dispute as to its existence." *Id.* at *226*. In sum, since neither the chapter 13 plan nor the claim objection order eliminated the lien, the trustee was able to sue to avoid that lien for the benefit of the estate, and settle that lien avoidance suit with the lender.

In this case the Debtor argues that the 11/11 Order precludes Wells Fargo from seeking a determination regarding the enforceability of its lien, or the necessity for any valuation of that lien. The Renewed Objection asserted that the Wells Fargo claim should be treated as an

---

[13] "[B]efore a Chapter 13 plan may be *res judicata* for unlitigated provisions in the Tenth Circuit, the plan must (1) specifically and unambiguously advise the creditor that is rights will be altered by confirmation of the plan; (2) decisively advise the creditor how its claim shall be treated upon confirmation; and (3) provide heightened notice to the creditor that, at a minimum, advises of the extraordinary provision to be given preclusive effect in a confirmation order." *Ramsey*, 356 B.R. at 224.

unsecured claim because the BNC Mortgage was unrecorded. The 11/11 Order was a final determination by this Court that the Wells Fargo claim is an unsecured claim in this bankruptcy case.

The *res judicata* effect of the 11/11 Order is determined by satisfaction of four requirements-

> (1) there must be a judgment on the merits,
> (2) the decision must be rendered by a court of competent jurisdiction,
> (3) the parties, or those in privity with them, must be identical in both suits; and
> (4) the same cause of action must be involved in both cases.

*I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986).[14] The collateral estoppel effect of the 11/11 Order also requires satisfaction of four elements:

> The party seeking to invoke collateral estoppel must establish that:
> (1) the issue in the pending case is identical to that decided in a prior proceeding;
> (2) the issue was necessarily decided in the prior proceeding;
> (3) the party to be estopped was a party or was adequately represented by a party in the prior proceeding; and
> (4) the precluded issue was actually litigated in the prior proceeding.

*U.S. v. Weiss,* 467 F.3d 1300, 1308 (11th Cir. 2006). The 11/11 Order does not have a preclusive effect on the issue of whether Wells Fargo can claim a lien against the Property because an objection to claim is not the same cause of action as determination of the validity of a lien, and the issue of the validity of Wells Fargo's lien was neither actually litigated nor necessarily decided by resolution of the Renewed Objection.

Wells Fargo's failure to appear and contest the Renewed Objection means the 11/11 Order is in the nature of a default judgment, a similarity noted by the bankruptcy court in *Ramsey*. A default final judgment in federal court can have a preclusive effect for purposes of

---

[14] Federal principles of *res judicata* apply because the Court is considering the effect of a bankruptcy court order. If a Florida state court order was involved in this dispute, this Court would have applied Florida principles of *res judicata*. *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1307 (11th Cir. 2006).

*res judicata*. *Riehle v. Margolies*, 279 U.S. 218 (1929); *accord Morris v. Jones*, 329 U.S. 545 (1947). A bankruptcy court order that adjudicates the allowability of a proof of claim has *res judicata* effect, even if the claim was not actually litigated. "*Res judicata* does not require the precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim." *EDP Medical Computer Systems, Inc. v. U.S.,* 480 F.3d 621, 626 (2d Cir. 2006). In general, a default judgment will not be given collateral estoppel effect in a subsequent proceeding, because the issues are not "actually litigated"; there are, however, exceptions, such as when a defaulted party has participated in the lawsuit, and the default judgment is entered as a sanction. *See, e.g., In re Chatkin*, 465 B.R. 54 (Bankr. W.D. Pa. 2012). In this case, there is no question that Wells Fargo was fully involved with the Debtors regarding its claim and lien and the "default" was apparently due to lack of diligence; it was not due to lack of notice.

The Renewed Objection did not include in its prayer for relief that the lien of the BNC Mortgage should be extinguished, nor did it seek a finding by this Court that the BNC Mortgage did not create a lien because it was not recorded; rather the Renewed Objection only asked that the claim be treated as an unsecured claim and that BNC be prevented from recording the BNC Mortgage post-petition. As in *Ramsey,* the validity of the lien was never disputed in the Renewed Objection. Moreover, the validity of the lien could not have been disputed in the Renewed Objection.[15] There are only two ways in which the Debtors could seek to remove the lien of the BNC Mortgage. The first was to file an adversary proceeding to determine the extent, validity, and priority of the lien. Such an adversary proceeding was filed, but it was between

---

[15] Had the Renewed Objection specifically attacked the validity of the lien, or had the validity of the lien been a necessary issue to be resolved as part of the Renewed Objection, this would have impacted this Court's analysis of the *res judicata* or collateral estoppel effect of the 11/11 Order on the lien itself; however it is not necessary for the Court to make any such determination in this case.

competing lienholders; as already noted, neither the Debtors nor the Trustee filed any cross-claims in that adversary proceeding and never filed a separate action. The other way to eliminate the lien would have been for the Debtors to file a motion to value or provide for specific valuation of the Property in the Chapter 13 Plan; however, the Debtors would not have been able to strip off the lien of the BNC Mortgage by valuation because, whether in first or third position, the lien is not subject to stripping.[16] As discussed more fully below, the lien of the BNC Mortgage is enforceable by Wells Fargo against the Debtors, whether or not the BNC Mortgage was recorded; thus while the 11/11 Order conclusively determines that in this bankruptcy case Wells Fargo holds only an unsecured claim, and that, for purposes of confirmation, the Debtors do not have to satisfy the requirements of 11 U.S.C. §1325(a)(5), the order does nothing else.

There are two cases that support the Court's conclusion in this case. In *In re Sernaque*, 311 B.R. 632 (Bankr. S.D. Fla. 2004) ("*Sernaque*"), Judge Mark dealt with what one might view as almost the mirror image of the issue presented in this case. In *Sernaque*, the debtor valued the lender's collateral in the chapter 13 plan. The lender did not object to the plan and it was confirmed. When the debtor moved for entry of a recordable order stripping off the lender's lien based on the plan valuation, the lender objected, arguing that, in order to value the collateral, the debtor was required to file an objection to claim. In ruling against the lender (subject to resolution of certain notice issues) the court quoted *In re Calvert*, 907 F.2d 1069, fn. 1 (11th Cir. 1990) in emphasizing that there is a distinction between claim allowance under 11 U.S.C. §502(a) and determination of secured status under 11 U.S.C. §506. Each has its own purpose and its own process. Objection to the claim was not necessary to value the secured portion of the claim. *Sernaque,* 311 B.R. at 639.

---

[16] The Property is the Debtor's primary residence. Whether in first or third position, the value of the Property is such that 11 U.S.C. §1322(b)(2) prohibits a lien strip. *See* Debtor's Response (ECF #247).

In *Universal American Mortgage Co. v. Bateman (In re Bateman)*, 331 F.3d 821 (11th Cir. 2003) ("*Bateman*"),  the Eleventh Circuit held that a lender could not collaterally attack a confirmation order pursuant to which the arrearage owed to the lender was paid at a much lower amount than that which the lender claimed in its proof of claim.  The court held that, for purposes of the debtor's chapter 13 plan, the lender had to accept the stream of payments provided for by the plan based on the lower amount because the lender had neither objected to confirmation nor appealed the confirmation order.  Nonetheless, the court held the lender's claim for the balance of the arrearage not paid under the plan would continue to be secured by the lien of the mortgage because section 1322(b)(2) of the Bankruptcy Code did not allow a lien strip of the lender's mortgage and, because the debtor did not object to the proof of claim, the amount of the lender's claim was fixed at the claimed amount. Similarly, in this case, Florida law does not permit the Debtors to eliminate the lien of the BNC Mortgage just because it is not recorded, and the Renewed Objection was not the procedurally appropriate way to eliminate the lien – it merely set treatment of the claim in this case. [17]

Having determined that the 11/11 Order does not determine the nature of the BNC Mortgage but only the status of the claim filed by Wells Fargo, the Court must now turn to the ultimate issue that Wells Fargo has asked this Court to determine, and the Debtors' objections and concerns regarding that relief - whether the fact that Wells Fargo only has an unsecured claim means that Wells Fargo does not have a lien on the Property.

---

[17] Because the Court agrees that the lien created by the BNC Mortgage was not eliminated by the 11/11 Order, the Court will not address Wells Fargo's argument that it is entitled to relief under 11 U.S.C. §502(j).  Nevertheless, if the Court were required to reach this issue, the Court would deny this relief as it is clear in this case that Wells Fargo is merely seeking to use section 502(j) to circumvent the requirements of Fed. R. Bankr. P. 9023 and 9024, the relief afforded by which Wells Fargo is not entitled to under the facts of this case. *See Colley v. Nat'l Bank of Texas,* 814 F.2d 1008 (5th Cir. 1987*); Nat'l Cap. Mgt. LLC v. Herman,* 2011 WL 4531736 (M.D. Fla. Sept. 29, 2011); *accord US Aid Funds, Inc. v. Lanning,* 559 U.S. 260 (2010) ("[A] motion under Rule 60(b)(4) is not a substitute for a timely appeal.").

Wells Fargo argues, correctly, that the BNC Mortgage is valid and enforceable between the Debtors and Wells Fargo notwithstanding that the BNC Mortgage was not recorded. A mortgage is defined under Florida law as "[any] conveyances… conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money…." Fla. Stat. §697.01.  Pursuant to Fla. Stat. §697.02 "[a] mortgage shall be held to be a specific lien on the property therein described…."

There is nothing in Fla. Stat. §697.01 that requires that, in order for a document to constitute a mortgage, it must be recorded. Fla. Stat. §695.01 requires that any mortgage must be "recorded according to law" in order for the mortgage to "be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice…." Consequently, recording is required to protect a lien from innocent third parties; recording is not required in order for a lien to be created on the property.[18] Thus, although the BNC Mortgage is not enforceable until such time as it is recorded, the BNC Mortgage created a valid lien on the Property.[19]  See *Moyer v. Clark*, 72 So. 2d 905, 906 (Fla. 1954) ("Ordinarily a recording statute has no affect as to transactions between the parties involved… and the mere failure to record a

---

[18] A separate issue not raised by either party, and not necessary to this opinion, is whether Wells Fargo can enforce its rights under the BNC Mortgage since it is unrecorded. Fla. Stat. §199.282(4) prohibits enforcement of the BNC Mortgage unless and until all intangible taxes due on the note and mortgage have been paid: "[n]o mortgage, deed of trust, or other lien upon real property situated in this state shall be enforceable in any Florida court, nor shall any written evidence of such mortgage, deed of trust, or other lien be recorded in any public record of the state, until the nonrecurring tax imposed by this chapter, including any taxes due on future advances, has been paid and the clerk of circuit court collecting the tax has noted its payment on the instrument or given other receipt for it. However, failure to pay the correct amount of tax or failure of the clerk to note payment of the tax on the instrument shall not affect the constructive notice given by recording of the instrument." Since intangible taxes on notes and mortgages are paid in Florida when the mortgage is recorded, presumably no documentary tax was paid on the BNC Mortgage. This omission can be cured; Florida law does allow a lender to pay the stamps, together with any penalties and fines due, at the time the lender seeks to enforce remedies under an unrecorded mortgage.

[19] Wells Fargo, as well as several opinions cited by Wells Fargo, rely on *Gevertz v. Gevertz*, 595 So.2d 998 (Fla. 3d DCA 1990) ("*Gervertz*") for the proposition that a mortgage is enforceable between the parties to the mortgage whether or not the mortgage is recorded.  That is not exactly what the *Gevertz* case says.  What the *Gevertz* case holds is that there is no time deadline before which the mortgage must be recorded in order for it to be enforceable against a party to the mortgage, but, in fact, in *Gevertz*, the mortgage in question was recorded in order to be enforced.

deed does not effect [sic] the title of the grantee except as to creditors and subsequent purchasers for a valuable consideration *without notice*…."(citations omitted, emphasis in the original)).[20]

      The Debtors argue that it would be inequitable to allow Wells Fargo to have a lien on the Property because it is only due to the lender's negligence in failing to record the BNC Mortgage that Wells Fargo would have a third lien rather than a first lien on the Property.  The Debtors submit that they had intended to strip the AIS Mortgages, which they cannot do if the AIS Mortgages are, in fact, prior to the BNC Mortgage;  the Debtors cannot confirm a chapter 13 plan if they cannot strip those two liens.  Therefore, the Debtors argue, this Court should not recognize that Wells Fargo has a lien on the Property as the Debtors should not be penalized for the lender's negligence.  This equitable argument might have some merit if this Court had found that Wells Fargo is only allowed to seek relief by virtue of an equitable lien, but, this Court having found that Wells Fargo has a legally enforceable lien under its contract - the BNC Mortgage - the Court will not consider equitable grounds to deny those contract rights.

      Nonetheless, the law provides the relief that the Debtors seek. The general rule with respect to liens is that first in time is first in priority.  *Cain & Bultman, Inc., v. Miss Sam, Inc.,* 409 So.2d 114, 117 (Fla. 5th DCA 1982) ("*Cain & Bultman Inc.*"). The only exception to this rule is when a third party without notice of an unrecorded interest in property acquires an interest in that property. In this case, the BNC Mortgage clearly predates either of the AIS Mortgages. While neither the Debtors nor Wells Fargo could assert the priority of the lien created by the BNC Mortgage against the claims asserted by AIS, AIS no longer holds those mortgages since Wells Fargo purchased them.  Further there is no question that Wells Fargo, as a party to the BNC Mortgage, cannot assert priority of the later recorded AIS Mortgages over its own

---

[20] Having found that the BNC Mortgage is a lien on the Property, the Court does not need to address Wells Fargo's argument that it is entitled to an equitable lien.

13

mortgage.  Moreover, even if Wells Fargo were to argue that, as the assignee of the AIS Mortgages, it somehow "cleanses" its knowledge, that position is not supported in law or in equity.  Wells Fargo is a party that acquired its interests in the AIS Mortgages will full knowledge of the BNC Mortgage; thus, under the law, it takes its interest in the AIS Mortgages subject to the BNC Mortgage.  Furthermore, as observed by the Court in *Cain & Bultman, Inc.*, "[a] maxim of equity is to the effect that equity treats that as being done which should be done…. parties should do that which they have contracted to do…."40 So. 2d at 119.  Equity dictates that the BNC Mortgage should assume its rightful place at the front of the line, such as would have been the case if the BNC Mortgage had been recorded.

## *Conclusion*

Accordingly, for the reasons outlined in this opinion, the WF Motion is granted in part and denied in part.  The Court finds as follows:

a) The 11/11 Order is a final order which is not subject to being modified or vacated;

b) The 11/11 Order did not affect the lien of the BNC Mortgage, merely the status of Wells Fargo as the holder of a secured claim for purposes of this bankruptcy case;

c) Wells Fargo is not entitled to relief under 11 U.S.C. §502(j); however, the Court will consider a motion by the Debtors under section 502(j) seeking to reclassify the Wells Fargo claim as a secured claim if the Debtors choose to seek such relief;

d) The lien of the BNC Mortgage is a first mortgage lien on the Property; the AIS First Mortgage is a second lien on the Property and the AIS Second Mortgage is a third lien on the Property.

# # #

Copies furnished to:
Michelle Cavallaro, Esq.
Mitchell Nowack, Esq.

    Attorney Cavallaro shall serve a copy of this order upon all parties in interest and file a certificate of service with the Clerk of Court.